**In the United States District Court
for the District of Kansas**

———————

Case No. 23-cv-01153-TC-RES

———————

MONICA KRUSE,

*Plaintiff*

v.

MARC W. GERDISCH M.D.,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Plaintiff Monica Kruse sued an Indiana surgeon, Marc Gerdisch, alleging that Gerdisch's medical negligence caused her husband's death. Doc. 1. Gerdisch now moves for judgment on the pleadings. Doc. 44. For the following reasons, that motion is granted.

**I**

**A**

A motion for judgment on the pleadings is appropriate "[a]fter the pleadings are closed," which means "upon the filing of a complaint and answer." *Progressive Cas. Ins. Co. v. Estate of Crone*, 894 F. Supp. 383, 385 (D. Kan. 1995). When ruling on a motion under Rule 12(c), the court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in that party's favor." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1171 (10th Cir. 2016). Judgment on the pleadings should not be granted "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quotation marks omitted). As with a motion to dismiss, the plaintiff's complaint must plead a plausible claim. *Martin Marietta*, 810 F.3d at 1171.

1

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 556 (2007)). A claim need not be probable to be considered plausible. *Id.* But the facts, viewed in the light most favorable to the claimant, must adduce "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

Anthony Kruse, Plaintiff Monica Kruse's deceased husband, had a history of heart disease. Doc. 1-1 at ¶ 10.[1] Mr. Kruse visited a website, heartvalvesurgery.com, and ultimately found Defendant Gerdisch, a heart surgeon based in Indiana. *Id.* Mr. Kruse called Gerdisch and sent him his medical records. *Id.*

Mr. Kruse and Gerdisch then began to correspond. The two had a video consultation where Gerdisch explained his assessment of Mr. Kruse's heart condition, his surgical plan to treat it, and some preliminary steps that he thought Mr. Kruse should take before surgery. Doc. 1-1 at ¶ 11. Those consultations occurred while Mr. Kruse was in Wichita, Kansas and Gerdisch was in his office in Indiana. *Id.* The two men communicated virtually over the course of several months, with Gerdisch requesting that Mr. Kruse take steps to prepare for the upcoming surgery. *Id.* at ¶ 12. Mr. Kruse then traveled to Indianapolis, Indiana for surgery. *Id.* at ¶ 13.

On the morning of December 2, Gerdisch began to operate on Mr. Kruse. Doc. 1-1 at ¶ 14. After ten hours of surgery, Gerdisch emerged from the operating room and informed Mrs. Kruse that surgery had

---

[1] All document citations are to the document and page numbers assigned in the CM/ECF system.

2

not gone well and Mr. Kruse was in critical condition. *Id.* at ¶ 16. The following day, Gerdisch performed a second surgery on Mr. Kruse to improve the situation. *Id.* at ¶ 19. Unfortunately, Mr. Kruse never recovered and died three days later in the Indiana hospital. *Id.* at ¶ 22.

Mrs. Kruse filed suit in Kansas state court. She alleged a single claim of medical negligence that resulted in the wrongful death of her husband. Doc. 1. Gerdisch removed the suit to federal court, Doc. 1, and then unsuccessfully moved to transfer it to Indiana. Doc. 39.

Gerdisch now moves for judgment on the pleadings. Doc. 44. He argues that the case should be dismissed because Mrs. Kruse failed to comply with the requirements of the Indiana Medical Malpractice Act, which requires a plaintiff to submit her claims to an Indiana medical review panel and wait for the panel's opinion before filing suit.

## II

Indiana substantive law required Mrs. Kruse to submit her claim to an Indiana medical review panel before filing suit. She failed to do so, which requires dismissal. Accordingly, Gerdisch's motion is granted.

### A

Gerdisch argues that Mrs. Kruse's failure to comply with the Indiana Medical Malpractice Act requires dismissal. Doc. 44. That contention depends on establishing that Indiana law governs Mrs. Kruse's claim and that the identified statute is substantive law that applies in federal court.

**1.** The first question concerns which state's substantive law applies. A Kansas federal court sitting in diversity must apply Kansas's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For tort claims, Kansas follows the doctrine of *lex loci delicti*, under which "the situs of the injury determines the governing law." *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985). Mrs. Kruse alleged that the injury, Mr. Kruse's death, occurred in Indiana. Doc. 1-1 at ¶¶ 1, 13, 23, 24. Accordingly, Indiana substantive law applies. *See Talavera ex rel. Gonzalez v. Wiley*, 725 F.3d 1262, 1268 (10th Cir. 2013) (applying Kansas law where the tort occurred in Kansas); *see also Banner Bank v. Smith*, 30 F.4th 1232, 1238 (10th Cir. 2022) (noting that "[i]n diversity cases

. . . the *Erie* doctrine requires federal courts to apply federal procedural law and state substantive law").

Mrs. Kruse suggests that Kansas law, not Indiana's, might govern her claim. Doc. 51 at 10. The premise of her argument is that Gerdisch (allegedly) committed negligent pre-operative acts, so discovery would be required to figure out "the ultimate determination of *where* the malpractice occurred." *Id.* (emphasis in original). Even assuming she could establish one or more negligent acts occurred in Kansas, that is immaterial under Kansas's choice-of-law rules. Kansas law focuses exclusively on where the injury occurred. *Ling*, 703 P.2d at 735; *see Draughon v. United States*, 103 F. Supp. 3d 1266, 1282 (D. Kan. 2015) ("[W]here the injury occurs in Kansas and the negligent act occurs in another state, the law of the place of injury controls because it is the last act necessary to complete the tort."). And Mrs. Kruse expressly alleged that the injury—her husband's death—occurred in Indiana. Doc. 51 at 11. That means Indiana substantive law governs the parties' dispute. *See Raskin v. Allison*, 57 P.3d 30, 31 (Kan. Ct. App. 2002) (applying Mexico law where the injury occurred in Mexico); *Brown v. Kleen Kut Mfg. Co.*, 714 P.2d 942, 945 (Kan. 1986) (applying Kansas law in a products liability case when the plaintiff was injured in Kansas and the product was manufactured in Ohio); *McDaniel v. Sinn*, 400 P.2d 1018, 1021 (Kan. 1965) (applying Missouri law where the injury occurred in Missouri).

**2.** And the second question is whether the statute Gerdisch identifies is substantive or procedural. *Banner Bank*, 30 F.4th at 1238. The Indiana Medical Malpractice Act was enacted in response to increasing insurance premiums in Indiana. *Randolph v. Methodist Hosps., Inc.*, 793 N.E.2d 231, 236 (Ind. Ct. App. 2003). Its purpose was "to provide health care providers with some protection from malpractice claims in order to preserve the availability of medical services for the public health and well-being." *Id.* The Act establishes requirements that plaintiffs must meet before filing suit for medical malpractice, one of which is the presentation of their claims to a medical malpractice review panel. *See* Ind. Code § 34-18-8-4.

There is little dispute that the Indiana Medical Malpractice Act's medical review panel presentation requirement is a substantive feature of Indiana law. As the Seventh Circuit recognized, claims that are subject to the Indiana Medical Malpractice Act must be presented to a medical review panel before a plaintiff's estate may proceed, and this "medical review panel requirement is a substantive feature of the Act

4

that must be enforced in federal court." *Thompson v. Cope*, 900 F.3d 414, 424 (7th Cir. 2018); *see also Hahn v. Walsh*, 762 F.3d 617, 633 (7th Cir. 2014) (noting that "in diversity actions, application of state law is usually indicated where the state rule may seem procedural but is limited to a particular substantive area") (quotation marks omitted). Mrs. Kruse makes no argument to the contrary. *See generally* Doc. 51. And federal courts in Indiana routinely apply this feature of the Indiana Medical Malpractice Act in diversity suits. *See, e.g.*, *Rangel v. Reynolds*, 607 F. Supp. 2d 911, 927–28 (N.D. Ind. 2009); *Est. of Rice ex rel. Rice v. Corr. Med. Servs.*, 596 F. Supp. 2d 1208, 1224–25 (N.D. Ind. 2009).

**B**

Gerdisch argues that the suit should be dismissed because Mrs. Kruse failed to comply with the Indiana Medical Malpractice Act. Doc. 45 at 6. Specifically, he contends that I.C. § 34-18-8-4 requires Mrs. Kruse to submit her claim to a medical malpractice review panel before filing suit.[2] *Id.* Section 34-18-8-4 states as follows:

> [With exceptions not relevant here], an action against a health care provider may not be commenced *in a court in Indiana* before:
>
> (1) the claimant's proposed complaint has been presented to a medical review panel established under IC 34-18-10 . . . and;
>
> (2) an opinion is given by the panel.

Ind. Code § 34-18-8-4 (emphasis added).

Mrs. Kruse concedes that she did not submit her claim to a medical malpractice review panel as Indiana law requires. Nonetheless, she argues that she did not have to do so because the statute's text requires such submission before commencing an action only "in a court in Indiana." Ind. Code § 34-18-8-4; *see generally* Docs. 1-1 & 51. In other

---

[2] It appears that no court has considered whether a federal district court sitting in diversity outside Indiana must dismiss a suit for failure to comply with Section 34-18-8-4.

words, Mrs. Kruse alleges that this obligation does not apply unless the court is physically located in the State of Indiana.

The District of Kansas, sitting in diversity and applying Indiana substantive law, is effectively another court of Indiana. "[S]ince a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot . . . substantially affect the enforcement of the right as given by the State." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108–09 (1945); *accord In re County of Orange*, 784 F.3d 520, 531 (9th Cir. 2015).

This is consistent with the *Erie* doctrine. *Erie* reversed *Swift v. Tyson*, 41 U.S. 1 (1842), which held that federal courts sitting in diversity only had to apply state positive law and were "free to exercise an independent judgment as to what the common law of the state is—or should be." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 71 (1938). *Swift* had led to "grave discrimination," and it "rendered impossible the equal protection of the law" because individuals and entities alike would become citizens of a different state to trigger diversity jurisdiction and "avail themselves of the federal rule." *Id.* at 74–77. In holding that diversity cases are governed by the law of the state, *Erie* cemented two core principles: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that federal courts must apply the conflict of laws principles of the state in which they sit, otherwise diversity would disturb the administration of justice between federal and state courts).

The case of *Bledsoe v. Crowley*, 849 F.2d 639 (D.C. Cir. 1988), is instructive of this principle given the current context. In that case, a District of Columbia plaintiff sued two Maryland doctors in the federal district court for the District of Columbia for treatment he received in Maryland. *Bledsoe*, 849 F.2d at 640. A Maryland statute mandated arbitration for medical malpractice claims like Bledsoe's, stating that "an action or suit of [the type covered by the statute] may not be brought or pursued *in any court of this State* except in accordance with this subtitle." *Bledsoe*, 849 F.2d at 641 (emphasis added) (alterations omitted); *see* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02. The defendants made the same argument as Mrs. Kruse here: that "the statute by its own terms limits its application to Maryland state courts," and that the Maryland legislature defined the statute as procedural and therefore "intended to deny it 'extra-territorial' application." *Bledsoe*, 849 F.2d at 643–44. Thus,

6

Case 6:23-cv-01153-TC-RES   Document 89   Filed 09/29/25   Page 7 of 9

"while a federal court sitting in Maryland might apply the arbitration statute, a federal court sitting in another state could not do so." *Id.* at 644.

After finding that the Maryland arbitration statute was substantive law that applied in federal court, the District of Columbia circuit rejected the defendants' argument. The court explained the principle as follows:

> This is a strange argument indeed. The only relevant difference between a federal court sitting in the District of Columbia and one sitting in Maryland is in the starting point of applying the choice of law principles of the forum state. Once it has been determined, through application of those principles, that Maryland law governs, a D.C. federal court would apply Maryland law no differently than would a Maryland federal court. Whenever a forum under no compulsion to do so elects as a matter of conflicts policy to apply the law of another jurisdiction, that law is given extraterritorial effect.

*Bledsoe v. Crowley*, 849 F.2d at 644 (quotation marks omitted).

The application of the principle recognized in the Supreme Court's decision in *Guaranty Trust* and the D.C. Circuit's application of it in *Bledsoe* preclude Mrs. Kruse's argument. When Kansas choice-of-law principles point to Indiana substantive law, as they do here, the District of Kansas applies Indiana substantive law no differently than would a federal court sitting in Indiana. And Indiana federal courts routinely dismiss suits for failure to state a claim when the plaintiff has not first submitted her claim to a medical review panel. *See, e.g.*, *Thompson*, 900 F.3d at 424, 428 (reversing the district court where the plaintiff failed to comply with Section 34-18-8-4); *Rangel*, 607 F. Supp. 2d at 928 ("Here, Plaintiffs failed to bring their claim before the medical review panel and follow the procedures outlined in Ind.Code § 34–18–8–7. Thus, their medical malpractice claim against [the defendants] fail to state a claim and dismissal is proper."); *Est. of Rice ex rel. Rice*, 596 F. Supp. 2d at 1225 ("[B]ecause the review panel hasn't issued an order and the plaintiff didn't file suit pursuant to section 7, the Estate's complaint states no claim upon which relief can be granted under Indiana law as to [the defendants] at this point.").

7

Mrs. Kruse challenges that result by pointing to state court decisions from Kentucky, Illinois, and Ohio. In each of those cases, the courts of those states did not apply the Act because they were not, quite literally, courts in Indiana. *See* Doc. 51 at 5–7 (citing *Lowry v. Rothstein*, 2008 WL 1914755 (Ohio Ct. App. Feb. 29, 2008); *Ransom v. Marrese*, 524 N.E.2d 555 (Ill. 1988); *Stewart v. Kentuckiana Med. Ctr., LLC*, 604 S.W.3d 264 (Ky. Ct. App. 2019)). She also argues that Section 34-18-8-4 should not apply because this case was removed from Kansas state court and neither the Kansas state court where she originally filed suit nor the District of Kansas federal court where Gerdisch removed the claim is a court in Indiana. Doc. 51 at 7–8.

Pointing to state court decisions ignores the comity concerns motivating *Erie* that bind federal courts. In other words, even if a different result would arise if this case had remained in Kansas state court (and it is not clear that it would), a federal court sitting in diversity must abide by the applicable substantive law. Indeed, *Erie* is meant to prohibit a plaintiff from avoiding medical panel review statutes through forum shopping. The Kentucky case upon which Mrs. Kruse relied, for example, agreed with her argument that the Indiana Medical Malpractice Act does not apply in suits filed outside of Indiana but nevertheless dismissed for *forum non conveniens*, finding that "[plaintiff] should not be permitted to engage in forum shopping simply to avoid the medical-review panel requirement." *Kentuckiana*, 604 S.W.3d at 270. Federal courts have expressed the same sentiment: Plaintiffs should not be allowed to avoid medical malpractice panel requirements through forum shopping. *See, e.g.*, *Seoane v. Ortho Pharms., Inc.*, 660 F.2d 146, 149 n.4 (5th Cir. 1981) ("Our view of Erie requires that federal courts, in diversity cases, follow state policy regarding medical review boards."); *Feinstein v. Massachusetts Gen. Hosp.*, 643 F.2d 880, 886 (1st Cir. 1981) (noting that "[f]ailing to apply the requirements of [medical panel review statutes] in malpractice actions brought in the federal court would encourage forum-shopping by out-of-state plaintiffs . . . wishing to avoid the screening procedure."). And a federal court must follow *Erie* regardless of whether a case was removed to or filed originally in federal court. *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (performing the *Erie* analysis where a case was removed from state court).

Neither does Indiana caselaw support Mrs. Kruse's argument. As noted, this case is governed by Indiana substantive law as the Supreme Court of that State has understood it. Mrs. Kruse has identified no

caselaw indicating that the Indiana Supreme Court would limit Section 34-18-8-4 to suits filed in Indiana. To the contrary, it appears that the Indiana Supreme Court would disagree with that construction of the statute. *See IncreMedical, LLC v. Kennedy*, 212 N.E.3d 220, 225 (Ind. Ct. App.) ("Generally, a medical malpractice action may not be brought against a health care provider until a proposed complaint has been filed with the IDOI and an opinion has been issued by a medical review panel."); *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 376 (Ind. 2022) ("The MMA grants authority over medical malpractice actions first to a medical review panel, which must render an opinion on a claimant's proposed complaint before the claimant can sue a healthcare provider *in court*.") (emphasis added); *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 186 (Ind. 2011) ("Viewed from the historical perspective we believe the conclusion is inescapable that our General Assembly intended that *all actions* the underlying basis for which is alleged medical malpractice are subject to the act.") (emphasis added).

### III

For the foregoing reasons, Gerdisch's Motion for Judgment on the Pleadings, Doc. 44, is GRANTED. The case is dismissed without prejudice.

It is so ordered.

Date: September 29, 2025                    s/ Toby Crouse
                                            Toby Crouse
                                            United States District Judge

9